# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEFFREY A. DOCK and<br>LINDA L. LONG, | : | 09-cv-606 |
| Plaintiffs, | : | Hon. John E. Jones III |
| v. | : | |
| RUTH RUSH, DONALD READE,<br>and DONALD CAMPBELL, | : | |
| Defendants. | : | |

## **MEMORANDUM**

## October 29, 2010

### I. INTRODUCTION

Before the Court in this civil rights action asserted on behalf of a decedent, Jeremy W. Dock ("the decedent" or "Jeremy Dock") is Defendants Ruth Rush, Donald Reade, and Donald Campbell's ("Defendants") Motion to Dismiss the Amended Complaint for failure to state a claim upon which relief could be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 44.) For the reasons articulated in this Memorandum, the Court shall grant the Motion and dismiss this action. An appropriate Order shall enter.

### II. STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept

1

all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state

2

claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ---, ---, 129 S. Ct. 1937, 1949 (2009). To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . ." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). Accordingly, to satisfy the plausibility standard, the complaint must indicate that defendant's liability is more than "a sheer possibility." *Iqbal*, 129 S.Ct. At 1949. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later formalized in *Iqbal*, a district court must first identify all factual allegations that constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*, 550 U.S. at 555, 557. Such allegations are "not entitled to the assumption of truth" and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss. *Iqbal*, 129 S.Ct. at 1950. Next, the district court must identify "the 'nub' of the . . . complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.* Taking these allegations as true, the district judge must then determine whether the complaint states a plausible claim for relief. *See id.*

However, "a complaint may not be dismissed merely because it appears

unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 127 S.Ct. 1964-65, 1969 n.8). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## III. BACKGROUND

We incorporate by reference the factual background as articulated in our December 7, 2009 Memorandum and Order. (Doc. 29.) We will, however, briefly recount the procedural history of this action because it demonstrates the bewildering tenacity of the Plaintiffs to try this action on their own terms, often in defiance of Court orders, that supports our decision to dismiss the action.

Plaintiffs Jeffrey Dock and Linda Long ("Plaintiffs") initiated this action as executors of the estate of Jeremy A. Dock ("Dock" or "the decedent") by filing a Complaint against Defendants Ruth Rush, Donald Reade, Donald Campbell, Trooper Rick Blair, and Snyder County (collectively, "Defendants") on April 2, 2009. (Doc. 1.) Plaintiffs asserted claims under the First, Eighth, and Fourteenth Amendments[1] and state-law claims for negligence, wrongful death, and survivorship. Pursuant to Motions to Dismiss by all Defendants (Docs. 9, 11), we

---

[1]Via 42 U.S.C. § 1983.

4

dismissed Snyder County and Trooper Blair as Defendants, (thus dismissing Plaintiffs' state-law and Fourteenth Amendment claims), and granted Plaintiffs leave to amend their Eighth and First Amendment claims against Defendants Rush, Reade, and Campbell. (Doc. 29.) We advised Plaintiffs that, if it were not for the leniency we must give civil rights plaintiffs, their remaining claims were subject to dismissal for failure to state a claim. We noted that Plaintiffs failed to assert that the Defendants were aware of any threat to Dock's life or that they failed to take reasonable measures to protect Dock; in fact, the allegations in the Complaint indeed demonstrated that the officials took steps to protect Dock. Any such amended complaint was due on or before December 27, 2009.

Instead of filing an amended complaint as directed, Plaintiffs filed a Motion for Reconsideration of the Court's December 7, 2009 Order. (Doc. 30.) We denied the Motion for Reconsideration on April 21, 2010 because in our view the Motion was "patently unwarranted." (Doc. 34.) We again directed Plaintiffs to file an amended complaint within fourteen (14) days of the date of that Order. (*Id.*)

On August 6, 2010, with the pretrial conference looming within a month, Defendants filed another motion to dismiss and brought to the Court's attention that Plaintiffs failed to file an amended complaint as directed by our April 21, 2010 Order. That motion, however, was out of time so we denied the motion as stated,

5

but *sua sponte* addressed Plaintiffs' failure to prosecute the action and, more seriously, failure to abide by a court order. (*See* Doc. 37.) On August 18, 2010, we struck the action from a trial term and ordered Plaintiffs to show cause within seven (7) days why the action should not be dismissed for their failure to comply with a Court Order and prosecute the action, and noted that failure to abide with the order to show cause shall result in dismissal of the action. (Doc. 37.)

Apparently our directive that the case would be dismissed if Plaintiffs failed to comply was interpreted as a suggestion rather than a mandate. Instead of demonstrating on the record good cause for their failure to comply and attaching a proposed amended complaint, "Plaintiffs [] yet again failed to abide by this Order, and Plaintiffs' counsel [] again wasted the Court's time with nonsensical filings by instead filing what appears to be a motion requesting discovery *before* Plaintiffs file an amended complaint." (Doc. 37 pp. 1-2.) Tapping, and exhausting, reserves of patience that the Court was unaware it possessed, we *again* granted Plaintiffs a few more days to attempt to come into compliance with the Court's directives.

In response, Plaintiffs filed their "Amended" Complaint on August 30, 2010. However, the only things that were "amended" between the original complaint (which was mostly dismissed) and the amended complaint were the deletion of *one* name from the caption, attachment of photographic evidence that Plaintiffs suggest

support their otherwise unsupported claims, the addition of a few words indicating the attachment of exhibits, and the font size.[2]

## IV. DISCUSSION

As an initial matter, we will strike without analysis the following paragraphs that relate to claims that were already dismissed: ¶¶ 8-9, 29, 30 (to the extent it mentions negligence under state law), 31, 33 (in part, to the extent it mention of Snyder County), 35-40 (to the extent those paragraphs assert claims against Snyder County), 41-44. Thus, Counts II and III are, once again, fully dismissed.

We again lament that counsel chose to repeat the previously-dismissed allegations instead of focusing his efforts on properly asserting a First or an Eighth Amendment claim. Not only are we forced to inefficiently use the Court's time to address the Amended Complaint, but the failure to even attempt to re-allege the claims may effect a great injustice on Plaintiffs. Unfortunately, we will never know. As we discuss below, the claims as stated demonstrate no possible entitlement to relief and, based upon the procedural posture of this case, we find that amendment would be futile.

---

[2]As noted above, in the December 7, 2009 Memorandum and Order, we dismissed from the action two Defendants: Snyder County and Trooper Rick Blair. We also dismissed all of Plaintiffs' Fourteenth Amendment and state wrongful death claims, noted that the remaining claims probably should be dismissed as well, but granted Plaintiffs leniency to amend the complaint and properly assert those claims if they were able to do so.

Because the law regarding the relevant Eighth and First Amendment claims is the same as it was when we issued our December 7, 2009 Memorandum and Order (Doc. 29), we will now repeat the controlling legal principles found therein.

**A.	Eighth Amendment**

The Eighth Amendment's prohibition on cruel and unusual punishment imposes a "duty on prison officials to take *reasonable* measures to protect prisoners from violence." *Hamilton v. Leavy*, 117 F. 3d 742, 746 (3d Cir. 1997) (emphasis added) (internal quotations omitted). The duty to take "reasonable measures" does not impose upon officials a duty to ultimately protect a prisoner from violence. Rather, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm was not averted." *Id.* at 748 (quoting *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 1982-83 (1994)). To be "deliberately indifferent" within the meaning of the Eighth Amendment, a prison official "must actually be aware of the existence of the excessive risk," *Beers-Capitol v. Whethzel*, 256 F.3d 120, 131 (3d Cir. 2001), and must disregard that risk. *Farmer*, 511 U.S. at 834.

In the Amended Complaint, Plaintiffs *again* baldly assert that Defendants Rush, Reade, and Campbell exhibited extreme and deliberate indifference to

8

Dock's safety, and thus violated his Eighth Amendment rights to be free from cruel and unusual punishment.  In support, Plaintiffs assert that "defendants allowed [Dock] to be exposed to retaliatory beatings and death and the hands of unknown guards and/or prisoners" but fail to allege any facts that would render this conclusory statement at all reasonable or plausible.  In fact, rather than demonstrating that the Defendants failed to protect Dock, the Amended Complaint, albeit unintentionally, at best alleges that Defendants took measures to actually *protect* Dock.  Plaintiffs aver that Defendants Rush, Reade, and Campbell "made the decisions to place Jeremy in 'the hole' because they claimed concerns for his safety."  (Doc. 41 ¶ 23.)  Further, beyond omitting to demonstrate any "failure to protect" by the Defendants, Plaintiffs also fail to allege any particularized threat that Defendants should have been aware of.  Rather, Plaintiffs merely allege some generalized threat that resulted in Dock's placement in protective custody.  The Amended Complaint is, simply, devoid of allegations that demonstrate that there was a threat to Dock's health and safety, that Defendants were aware of that threat, and that Defendants did not take measures to protect Dock from whatever threat that was.  Therefore, because there are no plausible allegations that could establish any deprivation under the Eighth Amendment, we must dismiss that claim.

**B.** **First Amendment**

9

In terms very similar to their Eighth Amendment claims, Plaintiffs also assert that Defendants violated the decedent's First Amendment rights. To assert a First Amendment retaliation claim, a prisoner must demonstrate two threshold criteria: (1) the prisoner was engaged in a constitutionally-protected activity, and (2) the prisoner suffered an adverse action by prison officials. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001). After meeting the two threshold requirements, prisoner must first show that the constitutionally-protected activity was, at least, a substantial motivating factor in the decision to take the adverse action. *Id.* The burden then shifts to the defendant to demonstrate, by a preponderance of the evidence, that the action would have been taken in the absence of the protected activity. *Id.* Appropriate deference should be given to the decisions of prison officials. *Id.* at 334 (noting that the task of prison administration is difficult, and courts should generally defer to a prison official's expertise).

According to the Amended Complaint, Plaintiffs allege that Dock assisted officials in a criminal investigation, which, if accepted as true, would establish the first prong, that he engaged in a constitutionally-protected activity. With respect to an adverse action, however, Plaintiffs only allege that Dock "was suffering retaliation at the hands of these defendants' [*sic*] because he risked exposing the defendants to public scrutiny" (Doc. 41 ¶ 37) and fail to allege any "factual matter,

accepted as true, to 'state claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ---, ---, 129 S. Ct. 1937, 1949 (2009).[3] As discussed above, the Amended Complaint demonstrates only that Defendants indeed took measures to protect Dock by placing him in protective custody. But, even assuming that Plaintiffs asserted some sort of cognizable adverse action, the First Amendment claims would still necessarily be dismissed because the Amended Complaint nowhere alleges any facts that would support an inference of a causal connection between Dock's assistance in an investigation and the elusive adverse action.

## V.  CONCLUSION

For the reasons articulated above, despite countless opportunities to amend, Plaintiffs have failed to state any claim upon which relief could be granted. We will not consistently waste the Court's and Defendants' resources by granting to Plaintiffs' yet another bite at the apple to amend claims that are patently deficient and do not even rise to the level of speculative. We are not unmindful of the fact

---

[3]*Iqbal*, as most practitioners know, effectuated a sea change in pleading. But this seminal case and its mandate appear to have been totally missed, again, by Plaintiffs' counsel. *Iqbal* was meant to prevent the very course Plaintiffs seek to follow, which is to file a facially implausible complaint and discover their way into a plausible claim. That path, which might have worked under previous pleading regimes, is now foreclosed. Moreover, *Iqbal* is designed to encourage counsel to fully investigate the circumstances giving rise to potential claims prior to filing suit. We recognize that any such investigation may not be as searching as formal discovery. However, we see no evidence that even a modicum of inquiry was made here. Rather, Plaintiffs have proffered a series of conclusions based on bald speculation.

that the circumstances of this care are wrenching and tragic, particularly for Plaintiffs. But not all tragedies are actionable, and under no circumstance will they ever be actionable absent counsel's compliance with a court's directives and adherence to the law of pleading. We shall accordingly grant Defendants' Motion to Dismiss (Doc. 44), dismiss the Amended Complaint (Doc. 41), and close the action. An appropriate Order shall enter.